UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re: KIMBERLY ANN ZIZZA,<br><br>Debtor.<br>************************************<br>KIMBERLY ANN ZIZZA,<br><br>Appellant,<br><br>v.<br><br>WILLIAM K. HARRINGON,<br>UNITED STATES TRUSTEE FOR<br>REGION 1,<br><br>Appellee. | Civil Action No. 16-cv-40102-IT |

MEMORANDUM & ORDER

March 8, 2017

TALWANI, D.J.

    Kimberly Ann Zizza appeals from the United States Bankruptcy Court's judgment denying her a discharge pursuant to 11 U.S.C. § 727(a)(4)(A). See Notice of Appeal [#1]. For the following reasons, the judgment is AFFIRMED.

I.     Background

    Zizza applied for Chapter 13 Bankruptcy on March 6, 2011. Joint Appendix 6 [#13].[1] On April 8, 2011, the standing Chapter 13 Trustee[2] convened and presided over a creditors' meeting as described at 11 U.S.C. § 341. (J.A. 43).

    In June and September 2011, Zizza amended certain bankruptcy filings. (J.A. 134, 154).

---

[1] The parties' Joint Appendix [#13] is hereinafter cited as "(J.A. [page number].)"

[2] Attorney Denise M. Pappalardo.

On October 5, 2012, Trustee Pappalardo sought dismissal of Zizza's bankruptcy case for failure to make the plan payments. (J.A. 327). Shortly thereafter, on October 30, 2012, Zizza sought again to amend her bankruptcy filings, including her Statement of Financial Affairs. (J.A. 158). In these papers she sought to add "two different personal injury tort claims involving the Debtor as the plaintiff," as well as claimed exemptions of these claims. (J.A. 158).

Following these disclosures, on November 21, 2012, Trustee Pappalardo moved to convert Zizza's Chapter 13 petition to a Chapter 7 petition. On January 22, 2013, the United States Bankruptcy Judge held a hearing on this motion, at which Zizza, her personal injury attorney Nicholas Guerrera, her bankruptcy attorney Anthony Rozzi, and Chapter 13 Trustee Pappalardo participated. (J.A. 214-237). Ruling from the bench, the Bankruptcy Judge converted the Chapter 13 petition to a Chapter 7 petition. (J.A. 235-236). On October 18, 2013, the United States Bankruptcy Appellate Panel for the First Circuit upheld this decision. (J.A. 239-248). The converted Chapter 7 proceedings then continued apace. (J.A. 12-21).

II.     The Adversary Proceedings

On September 30, 2014, William Harrington, United States Trustee for Region One, commenced adversary proceedings against Zizza, requesting that she be denied discharge pursuant to 11 U.S.C. § 727. (J.A. 30-38); Complaint, United States Trustee v. Zizza, Ap. No. 14-04089 (Bankr. D. Mass. Sep. 30, 2014), ECF No. 1. As grounds, the United States Trustee asserted that Zizza had made repeated omissions in her bankruptcy filings, and that the record demonstrated both concealment of property under 11 U.S.C. § 727(a)(2), and fraudulent statements under 11 U.S.C. § 727(a)(4)(a), sufficient to warrant denial of discharge of Zizza's debt.

On June 16, 2016, the Bankruptcy Judge presided over a trial in the adversary proceeding. (J.A. 361-511). Three witnesses testified—Zizza (represented by new counsel, Attorney David Baker), Attorney Rozzi, Zizza's attorney in the Chapter 13 proceedings, and Trustee Pappalardo. Twenty-six exhibits were admitted, including the transcript of the April 2011 creditors' meeting, and Zizza's filings in the Chapter 13 proceedings. (J.A. 514-515). The parties also stipulated to material facts. (J.A. 345-350). The stipulations and evidence at trial support the following chronology of events:

(1) On November 23, 2010, Zizza, an attorney, filed a lawsuit, Zizza v. Duffy, in Essex County Superior Court, seeking to recover damages for injuries Zizza allegedly sustained in a November 2007 car accident (the "Duffy Litigation") (J.A. 347);

(2) On February 11, 2011, Zizza filed another lawsuit, Zizza v. Sapienza, also in Essex County Superior Court, seeking to recover damages for injuries Zizza allegedly sustained in a February 2008 car accident (the "Sapienza Litigation") (J.A. 347);

(3) On February 25, 2011, the Essex County Superior Court entered an order of dismissal *nisi* in the Duffy Litigation for the case's failure to meet the Superior Court's $25,000 jurisdictional threshold for damages (J.A. 347);

(4) On March 6, 2011, Zizza, through counsel, filed a voluntary Chapter 13 petition, which did not list as required any suits to which Zizza had been a party within the previous year and did not identify, *inter alia*, two accounts receivable in the aggregate amount of $7,738.23, a judgment lien amounting to $20,588.25, and an execution in the amount of $8,037.25 (J.A. 346, 348)[3];

---

[3] This March 6, 2011, petition lacked Zizza's original signature. On April 1, 2011, Zizza re-filed a hand-signed signature page of her petition, in response to the bankruptcy court's March 7, 2011, Order to Update. (J.A. 133).

(5) On March 10, 2011, Zizza requested a hearing concerning the Essex County Superior Court's dismissal of the Duffy Litigation (J.A. 347); a hearing was granted and scheduled for April 12, 2011 (J.A. 347);

(6) On March 30, 2011, Zizza filed an emergency motion requesting that the Essex County Superior Court vacate its dismissal of the Duffy Litigation (J.A. 347);

(7) On April 8, 2011, Zizza (herself an attorney) testified at the creditors' meeting under oath, and was represented by Attorney Anthony Rozzi. (J.A. 43). Zizza affirmed that she both reviewed all her bankruptcy documents and had nothing to add. (J.A. 45). Attorney Rizzo corrected this statement and informed the Trustee that "there are lawsuits . . . that need to be added," along with a "personal injury claim." (J.A. 45-46). Zizza then answered Trustee Pappalardo's inquiry as to whether the personal injury claim was "[f]or yourself" with a "Yes," and then proceeded to describe another lawsuit against her ex-husband in connection with child support, and a judicial lien against a client. (J.A. 46).[4] The parties then moved on to different topics.

(8) Later in the creditors' meeting, in response to Trustee Pappalardo's inquiry as to where Zizza would obtain a $20,000 lump sum payment contemplated by her Chapter 13 plan, Zizza explained she "had several judgments right now," that she "anticipat[es] that one of those judgment would come through by the end of the plan," but that she had not listed these judgments in either her Schedule B or

---

[4] Trustee Pappalardo testified at trial confirming this series of events. (J.A. 380-386). Attorney Rozzi testified at trial to knowing something of the lawsuits contemporaneously with the creditors' meeting, but also to having been told the lawsuits were null due to problems regarding jurisdictional thresholds and statutes of limitation. (J.A. 416-417, 421).

4

    Schedule C forms filed in connection with her Chapter 13 petition.[5] (J.A. 62-63). Zizza agreed to amend Schedules B and C by May 6, 2011. (J.A. 72).

(9) On April 12, 2011, Zizza attended a hearing before the Essex County Superior Court on Zizza's request to vacate the dismissal of the Duffy Litigation (J.A. 348); that motion was granted on May 3, 2011 (J.A. 348);

(10) On May 25, 2011, Zizza retained Attorney Guerrera to represent her in both the Duffy and Sapienza lawsuits (J.A. 348);

(11) On September 23, 2011, Zizza moved to amend Schedules B and C of her bankruptcy materials to add previously-unlisted accounts receivable and judgments (J.A. 348);

(12) This amendment again failed to disclose either the Duffy or Sapienza lawsuits (J.A. 348)[6];

(13) In October 2012, both Attorney Rozzi and Attorney Guerrera contacted Trustee Pappalardo to inform her of the Sapienza and Duffy lawsuits (J.A. 388, 418);

(14) On October 30, 2012, Zizza again sought to amend her bankruptcy papers to list the Sapienza and Duffy lawsuits, and also to claim them as fully exempt (J.A. 349).

On June 30, 2016, Judge Boroff issued his ruling, (J.A. 512-523), concluding:

> In this case, the debtor's testimony was not credible in any respect. This Court finds that the debtor's failure to list assets of the estate, namely the accounts receivable and the two lawsuits in question, constituted a reckless disregard for the truth. The questions asked in the bankruptcy schedules and the Statement of Affairs were in plain English, and as an attorney, Ms. Zizza knew the meaning of signing documents under oath.

---

[5] There is also brief mention by Attorney Rozzi about adding "any lawsuits that are important." (J.A. 61)

[6] Zizza settled one of those lawsuits for $20,000 on September 27, 2012. (J.A. 349).

> I find and I rule that the various omissions in the first and second iterations of her schedules and Statement of Financial Affairs were executed by her under oath, either knowingly or fraudulently incorrectly or with a reckless disregard of the truth or falsity of the information contained therein. Accordingly, I find and I rule that the debtor's discharge be denied under Section 727(a)(4)(A), and I need not reach the question of the issues raised by the United States Trustee under Section 727(a)(2).

(J.A. 522). Judgment issued on July 12, 2016. See Judgment, United States Trustee v. Zizza, Ap. No. 14-04089 (Bankr. D. Mass. July 12, 2016), ECF No. 101.

This appeal followed.

### III.     Standard of Review

The First Circuit directs this court to "scrutinize [the bankruptcy court's] findings of fact for clear error, and afford de novo review to its conclusions of law." In re Healthco Intern., Inc., 132 F.3d 104, 107 (1st Cir. 1997). As Zizza's appeal largely centers on her contest of the bankruptcy court's determination of her fraudulent intent, it bears noting that the presence of said intent is a finding of fact—see In re Burgess, 955 F.2d 134, 136-37 (1st Cir. 1992), abrogated on other grounds by Field v. Mans, 516 U.S. 59 (1995)—and is subject to "particularly strong" deference given that the trial judge is uniquely qualified to assess credibility. See In re O'Donnell, 728 F.3d 41, 45 (1st Cir. 2013).

### IV.     Discussion

*A. The Law*

"The Bankruptcy Code 'limits the opportunity for a completely unencumbered new beginning to the honest but unfortunate debtor.'" In re Crawford, 841 F.3d 1, 7 (1st Cir. 2016), quoting Grogan v. Garner, 498 U.S. 279, 286-87 (1991). One such limit is found at 11 U.S.C. § 727(a)(4)(A), which forbids new beginnings to those who (i) "knowingly and fraudulently" proffer a "false oath or account," (ii) bearing a material nexus with their case. See In re Crawford, 841 F.3d at 8. Two principles guide this analysis: first, that mere conjectures or

6

technicalities ought not to usurp the equitable purposes of bankruptcy; but second, that debtors cannot eschew the fundamental responsibility of candor on which the architecture of the bankruptcy code relies. See In re Tully, 818 F.2d 106, 110-12 (1st Cir. 1987) (analyzing 11 U.S.C. § 727(a)(4)(A)).

Omissions from bankruptcy schedules—filed "under the equivalent of an oath"—qualify as "false oaths" for purposes of 11 U.S.C. § 727(a)(4)(A). In re Crawford, 841 F.3d at 8. The bar for materiality is fairly low, requiring only that the false oath "bear[] a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of property." Id.

"Reckless indifference to truth" satisfies 11 U.S.C. § 727(a)(4)(A)'s requirement that false statements be "knowing and fraudulent"—and said "reckless indifference" may be inferred via repeated omissions of assets from bankruptcy filings. See In re Tully, 818 F.2d at 110-11. In re Tully further observed that when the bankruptcy judge considered the debtor's excuses for repeated omissions—and when those excuses invited suspicion—reversal was inappropriate. Id.

Finally, it is "well settled that reliance upon advice of counsel is . . . no defense where it should have been evident to the debtor that the assets ought to be listed in the schedules." Id. at 111; see also In re Hannon, 839 F.3d 63, 73-74 (1st Cir. 2016). While reliance on advice of counsel *to whom the debtor divulged all facts* may "generally" rebut an inference of fraud, acting on advice of counsel is not a defense when the omissions are "transparently plain." See In re Mascolo, 505 F.2d 274, 277 & 277 n.4 (1st Cir. 1974).

B. Zizza's Case

The record affords no grounds sufficient to warrant reversal of the bankruptcy court's decision. Zizza does not appear to contest—nor could she contest—that her sworn-to schedules

were both false and material to her case. Her stipulations to the bankruptcy judge cement this conclusion. (J.A. 345-353).

Whether those false statements made under oath were sufficiently indifferent to truth is, again, a question of fact reserved to the bankruptcy court as "the factfinder of first resort." In re Tully, 818 F.2d at 111. And the record contains not only a lack of "clear error" concerning this finding, but evidence that supports the bankruptcy court's conclusions. Zizza did not include the personal injury claims in her initial filings, and admitted to a personal injury claim only after it was raised by her counsel. Despite promising to update her schedules, she again failed to include the suits in her amendment—an amendment filed not in haste but "at the debtor's leisure"—invoking the same suspicion that attached to the debtor's repeated omissions in In re Tully, 818 F.2d at 111.

Further, the disclosure on October 30, 2012, occurred nearly contemporaneously with what appears to be a breakdown in the relationship between her and her personal injury attorney, and the attendant disclosures resulting therefrom. (J.A. 194) (noting the October 15th motion to withdraw filed by Attorney Guerrera, and October 17th notification to the Essex County Superior Court Clerk's Office of Zizza's bankruptcy). Indeed, Trustee Pappalardo testified to receiving notifications of the lawsuits from both Attorney Rozzi and Attorney Guerrera in October 2012—which calls into question whether Zizza's October 30, 2012, disclosures were motivated by a good faith desire for transparency or in recognition that disclosure was inevitable. (J.A. 388).

The principal excuse advanced in Zizza's brief for these repeated omissions—that she divulged all information to her attorneys who failed her, see Appellant's Corrected Opening Brief 9-10 [#17]—runs contrary to In re Tully's and In re Mascolo's guidance regarding reliance on counsel. The fact that the creditors' meeting transcript vaguely indicates Attorney Rozzi's

early awareness of a personal injury claim—a fact on which Zizza places primary importance[7]—is not inconsistent with a finding that Zizza either failed to fully divulge these claims to Attorney Rozzi or (as Attorney Rozzi's testimony alludes to) wrongly assured him of the claims' non-viability.[8,9] (J.A. 416-417; 421).

In sum: although the trial transcript indicates several potential inconsistences concerning what Zizza told her attorneys and when they were told, (J.A. 440-453, 467-473, 482), this court is not charged with the task of re-assessing and re-weighing the potentially inconsistent documentary or testimonial evidence; instead, this court determines whether clear error demands reversal. The record reveals the bankruptcy court considered ample evidence, weighed it, and reached a not-clearly-erroneous factual conclusion. Such must be affirmed.

C. *Zizza's Other Arguments*

Zizza advances two further challenges to the bankruptcy court's decision, both of which stem from the Bankruptcy Judge's statement that "in many respects" the facts recited by the Bankruptcy Appellate Panel in its earlier affirmance of the Chapter 7 conversion "are the law of the case." Zizza argues that the Bankruptcy Judge improperly applied the doctrines of either

---

[7] The bankruptcy court stated that "The debtor did not disclose the pending lawsuits during the course of the creditors' meeting"—but (brief) reference to at least one personal injury suit was in fact made (J.A. 45-46).

[8] At the conversion hearing, Attorney Rozzi argued that some combination of a statute of limitations and an amount-in-controversy bar to Massachusetts Superior Court jurisdiction led Zizza to view the tort suits as non-viable and thus unnecessary to disclose. (J.A. 215-220). He confirmed this theory at the discharge trial as well. (J.A. 416).

[9] For his part, Attorney Guerrera stated in his application for attorney's fees and expenses that he had not known of Zizza's bankruptcy until October 15, 2012, when he learned of the bankruptcy through independent research. (J.A. 187).

collateral estoppel or *res judicata*. She further argues that any reliance on the findings of the conversion hearing or its appeal was error because that hearing was not "evidentiary" in nature.

The problem with both arguments is that the bankruptcy court neither applied those doctrines nor relied on the findings of the earlier, non-evidentiary hearing. Instead, after describing the *de novo* trial he conducted, including identifying the witnesses who testified and the exhibits admitted, the Bankruptcy Judge concluded that "based on the evidence" taken at the hearing,[10] the BAP's recitation "correctly and succinctly describes the material events." (J.A. 515). Thus, by its express terms, the Bankruptcy Judge's decision was premised on his own determination—*after a trial*—of the facts recited by the Bankruptcy Appellate Panel.

V.     Conclusion

In accordance with the foregoing, the court need not reach—just as the bankruptcy court did not reach—the separate grounds for discharge found in 11 U.S.C. 727(a)(2). The Judgment—United States Trustee v. Zizza, Ap. No. 14-04089 (Bankr. D. Mass. July 12, 2016), ECF No. 101—is AFFIRMED.

IT IS SO ORDERED.

DATE: March 8, 2017

/s/ Indira Talwani
United States District Judge

---

[10] The bankruptcy judge incorrectly used a date of June 6, 2011, when the trial was conducted on June 16, 2016.